MRS. SUSAN BROADWELL *v.* BENJAMIN RODRIGUES.

Every one is at liberty to renounce what the law has established in his favor and interests but him- self. But individuals cannot, by their conventions, derogate from the force of laws made for the preservation of public order or good morals.

The law of Louisiana allows individuals to derogate, by their conventions, from any advantages which the general law may have allowed them, under three modifications: 1. That the law granting the advantage be not one expressly or impliedly prohibitory of such renunciation; 2. That the renunciation do not affect the right of third persons; and 3. That the renunciation be not contrary to the public good.

The owner of property may lawfully contract in relation to it, and he is constrained by no law, as to the terms and conditions on which he may dispose of or affect it, except in cases for which the law itself has provided.

A mortgage debtor may legally renounce the benefit of appraisement in the proceedings to sell on executory process, and will not be afterwards allowed to attack the sale as invalid.

APPEAL from the Sixth District Court of New Orleans, *Howell*, J.
*C. Roselius and Alfred Philips, for plaintiff and appellant.*—The only·
question presented for decision in this case is, whether the clause inserted.
in the act of mortgage, dispensing with the appraisement required by
articles 673 and 745 of the Code of Practice, in case of a judicial sale, is.
valid in law? .

A proper solution of this question depends on the application of a.
familiar principle of law, rather awkwardly expressed in the first para-·
graph of the 11th article of the Civil Code, that "individuals cannot, by
their conventions, derogate from the force of laws made for the preser--
vation of public order or good morals." It is enunciated with much more.
clearness and precision in several passages of the Roman Laws, to some ·
of which it may be useful to refer: Privatorum conventio juri publico,
non derogat. Leg. 15, § 1, D de Regulis Juris. To the same effect: Jus
publicum privatorum pactis mutari non potest. Leg. 38, D. de Pactis;.
and the 16th section of the same law expresses it in still stronger terms:
"Et generaliter, quoties pactum a juri communi remotum est, servari.
hac non oportet; nec legari, nec jusjurandum de hac adactum, *ne quis
agat.* Marcellus, libro secundo digestarum, ecribit: Et si stipulatio sit.
interposita de his, pro quisus pacisci non licet, servanda non est; sed
omnino rescindenda." And Leg. 7, D. de Pactis, we read: "Ait preator,
pacta conventa, quae neque dolo malo, neque adversus leges, plebiscita,.
senatus consulta, edicta principum, neque quo fras cui earum fiat, facta.
erunt, servabo."

It is manifest from these ·authorities, that by the terms, laws made for
the preservation of public order, used in our Code, is designated that
class of laws, which in technical terminology is called public in contradis-
tinction to private laws. And it is equally clear, that all laws regulating·
the enforcement of legal obligations through the agency of the judicial.
department of the government, are public laws. What, indeed, is the.
action brought in a court of justice, but the interposition of the public
power of the State through the judiciary for the vindication of a private·
right? When a Court renders a judgment, and directs the execution of
that judgment, it exercises the sovereign power of the State; and all laws ·

applicable thereto are necessarily public, and not merely private, governing the rights and obligations arising from the relations between man and man. This distinction results from the very definition given in the Institute: Publicum jus est, quod statum rei Romanae spectat; privatum, quod ad singularum utilitatem pertinet." On principle, then, it would seem too clear to admit of controversy, that the law requiring the property of the judgment debtor to be appraised before it can be sold by the Sheriff, in execution of a judgment, is a public law; and that an agreement to waive or dispense with the appraisement is absolutely void.

But it is contended by the learned counsel for the defendant, that the necessity for appraisement in judicial sales is established exclusively for the benefit of the defendant; and that he may, therefore, validly renounce it, under the second paragraph of the same article of the Code, which provides that "in all cases in which it is not expressly or impliedly prohibited, individuals can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good. This argument begs the question, by assuming that rule of law relative to appraisement creates a mere private right for the protection of the party who contracts the obligation. We have already shown that this is a mistaken view of the subject. All the property of the debtor is the common pledge of his creditors; and it is not only for the protection of the debtor that the law will not permit this common pledge of all to be sacrificed at the suit of one, but also for the protection of the rights of the other creditors.

But it is contended that the judgment debtor may, either expressly or even impliedly, waive the appraisement after his property has been seized; and a number of authorities are referred to to sustain their position. That this may be done, when the debtor is in solvent circumstances, cannot be denied; but it is evident that the sale in such case ceases to be a judicial sale, but becomes a consent sale, in which the Sheriff acts merely as auctioneer. In the same manner a party may dispense with the advertisements, notices, etc.; but in all these cases it will surely not be contended that the sale produces any of the legal effects of a judicial sale, in which the Sheriff derives his authority from the law alone. Would such a consent sale, for instance, produce the effect of raising subsequent mortgages? Hennen's Dig., p. 742, No. 9 et seq., new ed.

After the institution of a suit, the defendant may waive citation; but will any one pretend that the waiver of citation in the contract out of which the obligation which is sought to be enforced has arisen, would be valid? In further illustration of this doctrine we may refer to prescription which cannot be renounced by anticipation; but nothing prevents the party from doing so after it has been acquired. With reference to the renunciation of the plea of prescription, the learned counsel for the appellee say the counsel of the appellant affected to find an analogy between the waiver of prescription in the body of a promissory note. But there is no analogy between the two cases. The debtor who, at the

moment of contracting his debt, should waive by anticipation the plea of prescription, would contravene, by such an agreement, the dispositions of a law made in the interest of public order; for "interest reipublicae ut sit finis litium." But this is surely no reason why he should be permitted to renounce the prescription after the lapse of time has put an end to all litigation on the subject matter. It is obvious that the reason for the distinction rests on very different grounds: when the contract is formed neither the appraisement nor the prescription can be validly renounced, because the laws applicable to them are public laws, and concern public order; but, after the property has been seized, the defendant, when sui juris and solvent, may dispense with the appraisement and thereby convert a purely judicial sale into a consent one; and so with regard to prescription, for then in each case it has become a mere personal right entirely unconnected with public order. Much stress is laid on the expression which fell from the Court, in the case of the *Union Bank* v. *Bradford*, 2 A. 416: "the stipulation in the act of mortgage was one for the benefit of plaintiffs, which it was discretionary with the Bank to have enforced, or to renounce. It was virtually waived by claiming a seizure and sale according to law." It will be observed that the question of the validity of the renunciation of the appraisement was not presented for decision at all; the only objection made was that the sale had not been made in conformity with the order of the Court; it is, therefore, nothing but an obiter dictum, which cannot be invoked as authority. All the other cases refer to waivers after seizure.

*Buchanan & Gilmore, for defendant.*—The appellant, Mrs. Broadwell, having granted a mortgage, by authentic act, upon certain lots of ground, to secure the payment of her promissory note, in favor of any holder of said note ; and the note, at maturity, having been protested for non-payment, the holder, B. Rodrigues, applied to the Sixth District Court of New Orleans for executory process.

The act of mortgage contained a clause of waiver of appraisement of the property, in the event of suit being instituted on said note, and of seizure and sale taking place under a judicial order, the mortgagor consenting that the Sheriff should sell the property for cash, without appraisement, for what it would bring.

The prayer for a seizure and sale, and the order for the seizure and sale by the Judge of the District Court, were in conformity to this stipulation of the act of sale. But our proceedings were stayed by a writ of injunction, granted upon the petition of Mrs. Broadwell, which sets forth, as ground for injunction, that the clause of waiver of appraisement in the mortgage, is null and void, and of no force and effect; and that, notwithstanding said clause, petitioner is entitled to have an appraisement of the property previous to its sale by the Sheriff.

A rule was taken to dissolve the injunction on two grounds :

1. The petition sets forth no good and sufficient cause for the injunction.

2. That the security in the injunction bond does not possess the legal qualifications.

The second ground of the rule being waived on trial, the first ground alone was examined by the District Judge, in his reasons for judgment; and, this ground being sustained, the injunction was dissolved, with damages; and plaintiff has appealed.

I. The question of the absolute nullity of any agreement by a mortgagor to dispense with appraisement, in case of a forced sale under the mortgage, is here presented to your Honors, by appellant, in the most direct form. It is not pretended that the mortgagor was not a person capable of contracting; it is not alleged that there was any want of consent, fraud, duress or error; it is not stated in the petition (although we have heard something of the kind in the oral argument of Mrs. Broadwell's counsel upon the rule) that there was anything premature in the consent to waive appraisement, and that it might possibly have been waived at a later period. No; the proposition submitted by the learned counsel's petition is the broad one that property cannot be sold by the Sheriff without a previous appraisement; and that any agreement to the contrary is radically null, and is not binding upon the party who has made such agreement.

The law is not thus understood by us, nor has it ever been so understood by this Court.

The Code Napoleon, Art. 6, says: "On ne peut déroger, par des conventions particulières, aux lois qui intéressent l'ordre public et les bonnes mœurs." One of the commentators, Marcadé, vol. 1, p. 67, observes hereupon: "Cet article, en nous disant qu'on ne peut par convention déroger aux lois dont il parle, nous indique assez qu'on pourra par ce moyen déroger aux autres." And the jurisconsults, who compiled the Louisiana Code, while they adopted verbatim the Article 6 of the French Code, in the Article 11 of our Code, have added to that article a second paragraph, which is a legislative recognition of Marcadé's doctrine, and has removed much of the uncertainty of the French article. The second paragraph of Article 11, of the Louisiana Code, is as follows:

"But, in all cases in which it is not expressly or impliedly prohibited, individuals can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."

The law of Louisiana, therefore, allows individuals to derogate, by their conventions, from any advantages which the general law may have allowed them, under three modifications: 1. That the law granting the advantage be not one expressly or impliedly prohibitory of such renunciation. 2. That the renunciation do not affect the rights of third persons; and, 3. That the renunciation be not contrary to the public good.

The Code of Practice, as amended by the Act of 1828, declares that the Sheriff, before proceeding to a sale in execution of a judgment, shall give notice to the parties to appoint appraisers, and, in their default, shall

appoint appraisers himself; and that, at the first crying of the property (for cash), he shall make no adjudication, unless the property fetch two-thirds of the appraisement. This appraisement is, then, something established by law in favor of the party seized, in this sense, that it may prevent a sacrifice of his property for a cash price greatly below its value. But are parties contracting prohibited from renouncing the benefit of this law? There is certainly in the Code no express prohibition of a waiver of appraisement. Neither do we find anything in the context of the law, or in any laws, on the subject-matter, from which such a prohibition is to be implied. The renunciation of the right of appraisement, in this instance, does not affect any rights of third persons, at least no such thing is alleged nor approved; and it is not in any manner contrary to the public good.

In several cases, the Supreme Court of Louisiana have expressed opinions favorable to the general right of the parties to waive appraisement; and, whenever they have set aside sales for want of appraisement, there has either been no consent to waive appraisement, or that consent has been given with a fraudulent intention, and has had an injurious effect upon the rights of others.

Such was the case of *Heligsberg's Succession*, 1 An. 340. The judgment debtor, Fleming, was in failing circumstances, and the waiver of appraisement was collusively made to defraud creditors.

Of the same kind was the case of *Union Bank* v. *Bradford*, 2 An. 416. The bank held a mortgage against one Mapes, containing the identical clause found in our mortgage, authorizing a sale in execution, for cash, without appraisement. But the bank did not choose to avail itself of this clause; and, in the petition which it presented for executory process, the prayer was that the property mortgaged be seized and sold, as the law directs. The Judge made his order on the petition in the same form of words. But, the Clerk of the Court having issued the writ commanding the Sheriff to sell for cash, without appraisement, the property was collusively adjudicated to Bradford for thirteen dollars. The mortgagee complained of this, not the mortgagor; and the Supreme Court held the following language in their decision, of most important bearing upon the question before us : "It is manifest that this sale was not made in conformity to the order of the Judge. The stipulation in the act of mortgage was one made for the benefit of plaintiffs, which it was discretionary with the bank to have enforced, or to renounce. It was virtually waived by claiming a seizure and sale, according to law," etc. Your Honors will observe, that the right of a party to waive appraisement of his property seized, is expressly decided by the Supreme Court in the case cited.

And there was a case decided by the present bench, at the last May Term, (1865), *Desplates* v. *St. Martin et al*, in which the same doctrine has been maintianed by your Honors. Plaintiff instituted the action of nullity of a Sheriff's sale of his property, on the ground that it had been

sold without appraisement. The Court said : "It appears, from the testimony, that there was no appraisement of the property ; but it also appears that defendant was present, and, when called upon by the Sheriff to appoint an appraiser, declined to do so ; on the ground that the landed property was mortgaged for more than two-thirds of its value, and an appraisement was unnecessary. He also became purchaser of a horse, sold at the same time. He thus waived the appraisement and ratified the sale, and cannot now be heard to complain."

It has frequently been decided that the defendant in execution might waive the formalities required for the sale of his property, when such sale did not inflict injury on third persons. Thus, in *LaBlanc* v. *Dubroca*, 6 An. 362, a waiver of the three days' notice of seizure, previous to advertisement, was held to be a waiver of a right, personal to defendant, and legal. The same point was decided in *McDonogh* v. *Garland*, 7 An. 143.

And in *Mullen* v. *Harding*, 12 An. 271, a judgment debtor whose property (land) was seized on the 30th May 1848, waived notice, appraisement, and advertisement, and the property was sold by the Sheriff on the 3d June, 1848. This sale being attacked by a creditor holding a judicial mortgage, the Supreme Court said: "A judgment debtor is certainly at liberty to waive the formalities of the law, so far as they exclusively affect his personal interests," etc.

II. We have already seen that the French Code is not as explicit as our own, in relation to the right of parties to waive the benefit of the laws made in their favor, and the limits within which that right may be exercised. The French Code (Art. 6,) contents itself with declaring that no person is allowed to derogate, by particular agreements, from laws which interest public order and good morals. These expressions have received the interpretation of French jurists.

Merlin, Répertoire de Jurisprudence, Verbo Renonciation, No. 1, says : "En général, chacun peut renoncer aux facultés, aux privilèges, qui lui sont déférés pour son avantage personnel; c'est la conséquence de la maxime consacrée par la loi D. de regulis juris—Invito beneficium non datur." "C'est sur le même principe que sont fondées les lois qui décident et les arrêts qui ont jugé, que les nullités d'actes et de procédures, sont couvertes par l'acquiescement des parties intéressées à les faire valoir."

And Zachariæ, vol. 1, page 64, lays down as a rule in the interpretation of this article : "Chacun est libre de renoncer et par conséquent de déroger aux dispositions légales qui ne sont introduites qu'en sa faveur et qui n'intéressent que lui seul. Regula est juris antiqui, omnes licentiam habere his quæ pro se introducta sint, renuntiare."

On this subject, Duranton is word for word, almost, with Zachariæ. See Duranton, vol. 1 page 25, No. 110.

Toullier, vol. 1, Nos. 101 to 111, examines the question of the right of parties to waive or dispense with the law more at length than the two preceding. This eminent jurist lays it down as a general rule, that an individual is always at liberty to waive the benefits of laws made for his

advantage. The cases where he cannot do so, are exceptions to the general rule, and are confined within strict limits. Those exceptions he classes under three heads : 1st, where the law itself has prohibited any deviation from its dispositions; 2d, where it may be inferred from the dispositions or the motives of the law, that it is absolutely prohibitory ; 3d, where the law has for its foundation some public or political cause, or the interest of a third person. Vol. 1, No. 108. The Court will observe how exactly this classification of Toullier tallies with the provisions of the second paragraph of the 11th article of the Louisiana Code, which has been added by the framers of the Code to the 6th article of the French Code, incorporated verbatim in the first paragraph of our article. The coincidence is such, that we may conclude the second paragraph of our article was borrowed from Toullier. As to Toullier's general rule, we find it in the 1895th article of the Louisiana Code. "Agreements legally entered into, have the effect of laws on those who have made them."

IV. In the argument in the Court below, the learned counsel of the appellant affected to find an analogy between the waiver of the right of appraisement in this mortgage and the waiver of the prescription in the body of a promissory note. But there is no analogy between the two cases. The debtor, who, at the moment of contracting his debt, should waive by anticipation the plea of prescription, would contravene, by such an agreement, the dispositions of a law made in the interest of public order; for interest reipublicœ ut sit finis litium. Besides, he would be contravening a prohibitory law : Civil Code, article 3423. He would therefore be, doubly, within the exceptions to the right of the citizen to dispense with laws made in his favor, indicated by Toullier, and prescribed by our own Code.

ILSLEY, J. The only point raised in the present injunction suit, is, whether the clause inserted in the act of mortgage, dispensing with the appraisement required by Art. 673 and 745 of the Code of Practice, in a case of a judgment sale, is valid in law.

The plaintiff in injunction contends that all laws regulating the enforcement of legal obligations through the agency of the judicial department of the government, are public laws; and that an action brought in a court of justice is the interposition of the public power of the State, through the judiciary, for the vindication of a private right; that when a Court renders a judgment, and directs the execution of that judgment, it exercises the sovereign power of the State, and all laws applicable thereto are necessarily public, and not merely private, governing the rights and obligations arising from the relations between man and man; and reference is made, in support of this doctrine, to the institute "Publicum jus est, quod statum rei Romanæ spectat; privatum, quod ad singulorum utilitatem pertinet." And, as a corollary to this, it is urged that the law requiring the property of a judgment debtor to be appraised before it

can be sold by the Sheriff in execution of a judgment, is a public law; and that an agreement to waive or dispense with the appraisement, is absolutely void.

On the other hand it is contended, that the necessity for appraisement in judicial sales is established exclusively for the benefit of the defendant, and that he may, therefore, validly renounce it, under the second paragraph of Art. 11 of our Civil Code.

On the correctness of one or the other of these conflicting theories, rests the whole question in controversy.

From the general tenor of our own jurisprudence, we should hardly have deemed this question an open one, for it has been uniformly held, that the legal formalities attending final process are established by law in favor of debtors in execution; which they can renounce, without in any manner running counter to the proviso in the second paragraph of Art. 11 C. C. The cases to which our attention has been called, view the question in all its phases, and seem to consider the progressive steps in the execution of judgment as mere formalities; less a matter of public policy than of private concern, and hence they deem the renunciation or waiver of those rights as permissible under § 2 of Art. 11 of the Civil Code.

Our attention is directed to some of these adjudged cases.

In *Mullen* v. *Martin*, 12 A. 271, a judgment debtor whose property was seized on the 30th of May, 1848, waived notice, *appraisement* and advertisement, and the property was sold by the Sheriff on the 3d June, 1848. This sale being attacked by a creditor holding a judicial mortgage, it was held by the Court: "a judgment debtor is certainly at liberty to waive the formalities of law so far as they affect his personal interests."

In *Leblanc* v. *Dubroca*, 6 A. 362, and in *McDonald* v. *Garland*, 7 A. 143, a waiver of three days' notice of seizure, previous to advertisement, was held to be the waiver of a right personal to the defendant, and regular.

In *Desplattes* v. *St. Martin*, decided in May last, in this Court, it is said: "It appears from the testimony, that there was no appraisement of the property; but it also appears that the defendant was present, and when called upon by the Sheriff to appoint an appraiser, declined to do so, on the ground that the landed property was mortgaged for more than two-thirds of its value, and an appraisement was unnecessary. He thus waived the appraisement and ratified the sale, and cannot now be heard to complain.

These and some other cases not cited, referred to waivers or renunciations made by debtors, subsequent to the seizure of their property, and not to stipulations in the original contracts. In one case, however, *The Union Bank* v. *Bradford*, 2 A. 416, an identical clause with that which is found in the act of mortgage on which the order of seizure and sale was issued in this case, was inserted in the mortgage given to the bank.

The facts of the *Bradford* case were these :

The Bank held a mortgage against one Mapes, containing a clause authorizing a sale in execution for cash without appraisement; but the bank did not choose to avail itself of this clause, and, in the petition which it presented for executory process, the prayer was that the property mortgaged, be seized and sold *as the law directs*. The Judge made his order on the petition in the same form of words, but the Clerk of the Court having issued the writ, commanding the Sheriff to sell for cash, without appraisement, the property was collusively adjudicated to Bradford, for thirteen dollars. The mortgagee complained of this, not the mortgagor, and the Supreme Court held the following language in its decision :

"It is manifest that this sale was not made in conformity to the order of the Judge. The stipulation in the act of mortgage was one made for the benefit of the plaintiffs, which it was discretionary with the bank to have enforced or renounce. It was virtually waived by claiming a seizure and sale according to law."

It is true that no question in that case, as to the validity of the stipulation in the act of mortgage, respecting the waiver of appraisement, was directly before the Court; but the opinion of the Court is, nevertheless, unequivocally expressed, that the renunciation by the debtor was a valid one.

Whenever this Court has set aside sales for want of appraisement, there has either been no consent to waive appraisement, or that consent has been given with a fraudulent intention, and has had an injurious effect on the rights of others.

Such was the case in *Helligsberg's Succession*, 1 A. 340. The judgment debtor, Fleming, was in failing circumstances, and the waiver of appraisement was collusively made to defraud creditors.

The law of France, in its practical application, differs but little from the law of Louisiana, and both rest on the maxim of the Roman law, which lays it down as a rule that every one is at liberty to renounce what the law has established in his favor and interests but himself.

"Est regula juris antiqui omnes licentiam habere his quae pro se indicta sunt renunciare." L. 29, C. de Pactis.

But individuals cannot, by their conventions, derogate from the force of laws made for the preservation of public order or good morals. I. C. de Pactis 2; 3 L. 45, §§ de R. T. L. 38, §§ de Pactis, 2, 14.

Marcadé, commenting on the last rule cited, observes: "Cet article en nous disant qu'on ne peut par convention déroger aux lois dont il parle, nous indigne assez qu'on pourra, par a moyen, déroger aux autres." Vol. 1, p. 671. And the jurisconsults who compiled our Code, which they adopted verbatim, the Article 6 of the French Code, in the Article 11 of our own Code, have added to that Article a second paragraph, which is a legislative recognition of Marcadé's doctrine, and has removed much of the uncertainty of the French Article. (See also the doctrine of Toullier, hereinafter referred to.)

The second paragraph of Article 11 of our Code, is as follows :

"But, in all cases in which it is not expressly or impliedly prohibited, individuals can renounce what the law has established in their favor, when the renunciation does not affect the right of others, and is not contrary to the public good."

It is, then, evident, that the law of Louisiana allows individuals to derogate, by their conventions, from any advantages which the general law may have allowed them, under three modifications: 1. That the law granting the advantage be not one expressly or impliedly prohibitory of such renunciation. 2. That the renunciation do not affect the right of third persons; and, 3. That the renunciation be not contrary to the public good.

Art. 6 of the French Code, less comprehensive than our Art. 11, has also received its interpretation. Merlin, Répertoire de Jurisprudence, verbo Renonciation, No. 1, says: "En général, chacun peut renoncer aux facultés, aux droits, aux privilèges qui lui sont déférés pour son avantage personnel; c'est la conséquence de la maxime consacrée par la loi 68 D. de regulis juris: Invito beneficium non datur. C'est sur le même principe que sont fondées les lois qui décident et les arrêts qui ont jugé que les nullités d'actes et de procédures sont couvertes par l'acquiescement des parties intéressées à les faire valoir."

And Zachariæ, vol. 1, p 64, and Duranton, vol. 1, p 25, No. 110, lay down as a general rule to interpret the maxim enunciated in L. 29, de Pactis (Art. 6, French Code,) "Chacun est libre de renoncer, et par conséquent, de déroger aux dispositions légales qui ne sont introduites qu'en sa faveur, et qui n'intéressent que lui seul."

And the right of waiving or dispensing with the law, is examined by Toullier, vol. 1, No. 101 to 111. He says that, as a general rule, "an individual is always at liberty to waive the benefits of laws made for his advantage," and the cases where he cannot do so, are exceptions to the general rule, and are confined within strict limits. Those exceptions he classes under three heads:

1. Where the law itself has prohibited any deviation from its dispositions.

2. Where it may be inferred from the dispositions or the motives of the law that it is absolutely prohibitory; and,

3. Where the law has for its foundation, some public or political cause, or the interest of a third person. Vol. 1, No. 108.

Aided by the light which the French jurists have afforded us in solving this mooted question, we are now to determine whether the clause referred to in the plaintiff's mortgage is a nullity.

We are not prepared to subscribe unrestrictively to the plaintiff's theory, that formalities prescribed by law, in executing final process, are so essentially obligatory on the parties to a suit, that they may not be dispensed with. There is certainly in the Code no express prohibition against a party's waiving an appraisement of his property, either before or after the seizure of it. Nor is there anything in the context of the

law, or in any law on the subject matter, from which such a prohibition is to be implied.

Dunod expresses very clearly the reason why such a renunciation (if a nullity at all) falls under that class denominated relative. He says: "La nullité relative est celle qui n'interesse que certaines personnes·"

"Quoique la fin de la loi soit toujours l'intérét public et de la société, la vue de cet intérêt est souvent éloignée, et la loi considère alors en premier lieu, dans sa prohibition et dans les nullités qu'elle prononce, l'intérét des particuliers: *primarià spectat utilitatem privatam, et secundarià publicam.* Ce sont les particuliers qui profitent de sa disposition, et sa prohibition, en ce cas, produit une nullité qu'on appelle *respective*, parceque cette nullité n'est censée intéresser que celui en faveur de qui elle est prononcée; c'est pourquoi il peut seul s'en prévaloir et la proposer; et si d'autres le faisaient, on leur opposeraient avec raison qu'ils se fondent sur le droit d'autrui."

And Merlin, Répertoire de Jurisprudence, verbo Nullité, § 3, remarks: "A l'égard des nullités respectives, il est constant qu'elles sont couvertes par le consentement que donnent à l'exécution des actes qui les renferment, les parties intéressées à faire valoir ces nullités et à détruire ces actes. De là cette maxime si connue, que la nullité d'un ajournement judiciaire est effacée par la comparution de la partie assignée."

But, if such a stipulation were really an absolute nullity, could that nullity be urged by one who has sanctioned it by his consent ?

On this point, no definite rule can be laid down.

The great object, in such cases, is to ascertain on which side the public interest inclines, and thât determined by the circumstances presented in a particular case, it should form the basis of judicial action in regard to it. When a party has recognized the validity of an act, the nullity of that act should not be too readily declared; but on the other hand, acts palpably null, should not be too indulgently tolerated. Between criminal and civil laws, there is a marked difference; the former are strictly public laws, and must be so deemed by the courts of justice which administer them, and by individuals who come under their control.

But civil laws, which involve mere private rights, may be often lawfully relaxed and waived by covenants in order that the varied transactions, which in the course of human events, are constantly occurring, and with which no code of laws can possibly keep pace, may be facilitated and the more readily consummated.

This we apprehend to be the general rule, as relates to the renunciation of *private* rights. The exceptional cases are those which trench on public order ; and, within those exceptional cases, is not embraced, as we conceive, the stipulation in the mortgage granted by the plaintiff in injunction.

There are two great principles, which the law in its wisdom, recognizes:

1. The right of competent parties to contract freely.

2. The free, lawful disposal by the owner of his property.

This absolute dominion of the owner over his property, is well expressed by the terms of the Roman law. "Tua quisqua rei moderator et arbiter." He may use or abuse it as he lists. "Jus utendi et abutendi."

The owner of property may lawfully contract in relation to it, and he is constrained by no law, as to the terms and conditions on which he may dispose of, or affect it, except in cases for which the law itself has provided.

This is not controverted, but it is contended that when the law has prescribed the mode for the forced alienation of property under judicial process, that is a public law and cannot be waived in advance.

And might not the same argument be adduced in regard to the waiver of domicile, so as to vest a particular court of a district, other than that of a defendant, with jurisdiction over some particular case ? This, it might be supposed, was not deemed an illegal stipulation in a contract, previous to the passage of the act of the Legislature of this State, passed in 1861, (p. 137,) amending Art. 162 of the Code of Practice, and which act provides "that it shall not be permitted to elect any other domicile or residence for purpose of being sued," which certainly, by strong implication, would seem to have given a legislative interpretation to Art. 162, so as to convey the idea that, previous to the passage of the act of 1861, domicile might have been waived by stipulations in contracts to confer jurisdiction on some other Court. See Toullier, vol. 1., p. 95 ¾ 103. Without attaching too much importance to the maxim, " expressio unins est exclusio alterius," might it not apply to other rights conferred on suitors, and which are not expressly prohibited, as now is the waiver of domicile ?

Tested by the rule laid down by the eminent jurist Solon, in his Théorie de la nullité, vol. 1., No. 28, the question as to the class of nullities in which such a renunciation would fall, would not be difficult of solution, and we deem the rule a sound one. "Dans le doute si une nullité est d'ordre public, ou de droit privé, le silence du législateur doit être interprêté en ce sens, que la nullité n'a été portée que dans un intérêt privé; on conçoit, en effet, que si elle était d'ordre public, le législateur l'aurait exprimé, ou du moins, l'aurait donné à connaître; et quo le juge ne pourrait pas s'y méprendre. Dans le doute, cu doit toujours se prononcer pour la validité de l'acte. Et hæc quidem interpretatio per quam actus sustenitur dicitur regina interpretationem.

We conclude, then, that the plaintiff's renunciation of the benefit of appraisement, in her act of mortgage, is legally valid, and that she cannot be permitted to attack it.

It is therefore ordered, adjudged and decreed, that the judgment of the lower Court be affirmed; the costs of the appeal to be paid by the appellant.

Howell, J., recused.