### GOODWIN et al. v. FEDERAL MUT. INS. CO.

#### No. 5572.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Rehearing Denied April 1, 1938.

Writ of Certiorari and Review Denied May 2, 1938.

L. L. Lockard, of Shreveport, for appellant.

Irion & Switzer, of Shreveport, for appellees.

TALIAFERRO, Judge.

Defendant issued two policies on the life of Mose J. Boggs on August 2 and 5, 1935, respectively. He was then at least 75 years old. One policy is for $500.

Plaintiff C. G. Goodwin is named therein as beneficiary. The other policy on its face is for $1,000. It was intended to be for only $500. Plaintiff Sam C. Goodwin is designated beneficiary therein. Boggs died on November 17, 1936. The beneficiaries submitted to the insurer the usual proof of death and made demand for payment of the face amounts of the policies. This being refused, suit was instituted to recover said amounts, with interest and statutory penalties. It is alleged that the insured was a cousin of the plaintiffs.

Defendant denied liability under the policies and tendered back the premiums paid thereon. It specifically denied that the insured was to any extent related by blood or marriage to the beneficiaries. In support of its denial of liability, defendant avers that Boggs did not apply for the insurance stipulated in said policies and did not sign the applications therefor, nor did he pay any premiums thereunder; but, on the contrary, alleged that said applications were originated by plaintiffs, the insured's name thereon was signed by them or by some one at their instance, and that they paid said premiums personally; that the beneficiaries were to no extent dependent upon the insured and were not his creditors, and therefore had no reasonable expectation of profit or benefit from his continued life; that the blank spaces in said applications, which, if properly filled out, would disclose the relationship of the insured to the said beneficiaries, were not filled out, and defendant was not advised when the policies issued that no relationship existed between them. Bearing upon the defense of lack of insurable interest, the answer further declares:

" * * * Respondent shows that Mose J. Boggs was on old man in his dotage, in very poor financial circumstances, unable to attend to himself adequately, or to provide for his material wants, and that petitioners caused these policies to be issued on the life of this old man as a wagering contract and as such, the policies are against public policy and reprobated in the law and not enforceable, and your respondent especially pleads lack of insurable interest as above set forth."

It is additionally alleged by defendant that on November 15, 1936, two days prior to Boggs' death, plaintiffs, apprehensive of their right to collect said policies because of the deception practiced by them in procuring their issuance, called at defendant's office in the city of Shreveport and for the first time made known to defendant the fact that Boggs had not signed the said applications; that on investigation this information was confirmed; whereupon, on the morning of November 17th, before the death of the insured, a registered notice was posted to him advising him that the policies had for said cause been canceled, and a check for the amount of premiums paid was enclosed therewith.

Other specific defenses are set up. These are omitted here, as we are clearly of the opinion that the defense of lack of insurable interest is well founded.

Plaintiffs filed a plea of estoppel, based upon the fact that defendant endeavored to cancel the policies on the sole ground that the applications therefor were not signed by the insured; and that, having thus proceeded, it is precluded from denying liability on any other ground.

From judgments for plaintiffs as prayed for, defendant appealed.

Mose J. Boggs was an impecunious old bachelor. For fifteen or twenty years prior to his death he lived continuously in the home of the father and mother of plaintiff Sam C. Goodwin. He survived them both. He was considered one of the family, but was no relation to any of them, save a cousin by marriage. He was charged no board. Until some three years prior to his death, he tilled small acres of land and produced crops thereon and no rent charge was made against him. He worked the gardens of his benefactors and performed other chores about the place. Even these activities on his part were not required as a condition to his living in the family home and being provided for in whole or part. On this score, plaintiff C. G. Goodwin, a son of Sam C. Goodwin, testified:

"Q. How did he get his clothes, shelter and food? A. Through the family.

"Q. Did they charge it to him or give it to him, or what? A. He was not charged for it; we figured that was his home and what was due him, food and clothes for what he did.

"Q. Did he do much work in the last two or three years of his life, do any productive work, make any money? A. Nothing, only just a little truck patch, worked a garden.

"Q. Where did he get the property on which to work the garden? A. The Goodwin estate there."

Defendant's agents learned of Boggs' status through a friend of the Goodwin family and solicited plaintiffs to take out insurance in their favor on his life. The applications were filled out by one of these agents. Boggs' name was signed thereto by one of the plaintiffs. He was not consulted about the matter and only knew that the insurance had been effected nearly a year thereafter. He registered no protest, so far as the record discloses. Defendant's agents assumed that Boggs was a relative of the named beneficiaries, but there is no testimony in the record to disclose that they so represented themselves to said agents. It is shown that defendant never objected, in fact acquiesced in the practice of its agents accepting applications for insurance signed only by the designated beneficiary, where such beneficiary was related to the insured, or was his creditor. In the present case, the insured was not related by blood, and only remotely by affinity to the beneficiaries. He was under no financial obligation to either. He never lived in the home of either. When the elder Goodwin (father of Sam) died, Boggs continued to live in the family home with Mrs. Goodwin and her widowed daughter. Following Mrs. Goodwin's death, his residence was unchanged and remained so until his death. These facts clearly disclose lack of insurable interest in the life of Boggs by either plaintiff.

Although the question, what constitutes an insurable interest? has been much discussed by law writers and courts and frequently adjudicated in particular cases, yet no comprehensive definition of the term may be given. This is especially true as to life insurance. The term has been defined as follows:

"An insurable interest in the life of another is such an interest arising from the relations of the party obtaining the insurance, either as creditor, or as surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life; natural affection in cases of blood ties being sufficient. Home Mut. Ben. Ass'n v. Keller, 148 Ark. 361, 230 S.W. 10, 11; Aetna Life Ins. Co. v. Kimball, 119 Me. 571, 112 A. 708." 4 Words and Phrases, Third Series, page 347.

It is generally held that a parent, because of the close ties of blood, has an insurable interest in the life of a child, and vice versa. The same may be said of husband and wife on account of love and affection, and the reciprocal duty of support. The authorities disagree sharply as regards brothers and sisters. Cousins per se have no insurable interest in the lives of each other. A creditor has an insurable interest in the life of his debtor.

Couch's Encyclopedia of Insurance Law, vol. 1, § 294, contains this very lucid discussion of the question of what constitutes an insurable interest, and kindred questions arising from a policy where such interest is not present:

"It seems clear that an insurable interest in the life of another is not property. And, generally speaking, it may be said that an insurable interest in life is manifested where the person claiming it has a direct pecuniary claim on the life as a dependent, a creditor, a partner, a surety, or the holder of a contract right or obligation, or where, from the blood or affinity relationship between them, there is a definite and reasonable expectation that benefit will result to one from the continuance of the life of the other. As subsequently shown, however, a pecuniary interest is not always regarded as essential in the case of close blood relationship. In the first place, the interest, to be insurable, must be one in favor of the continuance of the life, and not an interest in its loss or destruction. Also, this interest in the continuation of the life constitutes an essential element of the contract, although such interest need exist only at the inception of the risk. *And the interest must be such that a contract of insurance based thereon will not be regarded as a wager. This means that there must be a reasonable ground to expect some benefit or advantage from the continuance of the life of the insured.* * *

"(Section 295) But it is now almost universally held in the different states, either by force of statutory regulations, or upon general principles of public policy, or similar grounds, that an insurable interest is necessary to the validity of a policy, no matter what may be the subject-matter, and that if no insurable interest exists, the contract is void. To illustrate, a policy on property wherein the insured has no interest or title is void, and no recovery can be had thereon in case of loss, either by the insured or his assignee, and notes given for the

premiums on such policies are void for want of a consideration. *Likewise, the almost universally accepted rule is that a party insuring a human life must have an insurable interest therein if the insurance is effected for his own benefit, or the policy will be void; and he must prove such interest in order to recover, since public policy does not permit one having no insurable interest to procure a policy of insurance upon the life of a human being and pay the premium as a speculation, or on a chance of collecting the insurance money.* This is upon the theory that the public has an interest, independent of the consent and concurrence of the parties, that no inducement shall be offered to one man to take the life of another. The parties to a contract of insurance cannot, even by solemn ageement, override the public policy which requires the beneficiary to have an insurable interest. Much less does mere knowledge upon the part of the insurer, or its authorized agent, of lack of insurable interest, relieve the insured from establishing such an interest as a condition precedent to recovery on the policy, since the doctrine of waiver cannot apply, for an insurance company cannot be held to a contract of insurance on the principle of waiver, where it could not make such a contract in the first instance. In fact, policies which are wagers, because of the fact that the persons who procure them have no insurable interest, will not be enforced, even though the insurer had knowledge of the facts at the time of issue, since it cannot estop itself to plead no insurable interest, for the reason that the court will not aid either party in enforcing a contract which is void as against public policy. Again, an incontestable clause in an insurance policy does not prevent the insurer from defending on the ground that it was issued to one having no insurable interest, and is, therefore, void as against public policy."

To the same effect are 32 Corpus Juris, p. 1111; Cooley's Briefs on Insurance, vol. 1, p. 128, 2d Ed.

The rule is tersely given in 14 Ruling Case Law, § 96, to wit:

"But in all cases there must be a reasonable ground, founded on the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. *Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured.* The essential thing is that the policy shall be obtained in good faith, and not for the purpose of speculating on the hazard of a life in which the insured has no interest."

It is obvious from these quotations, unless there is reasonable ground founded on the beneficiary's relations with the insured that he will be benefited by the continuance of the insured's life or sustain loss by his death, there is absent an insurable interest, an indispensable quality to the validity of the contract of insurance. If this quality is absent, the contract becomes one of wager, and null and void because reprobated by law and contrary to public policy.

In the present case, it is inconceivable that either beneficiary could have been benefited and any advantage come to them by the continuance of the assured's life. His death entailed no loss to them. He was practically helpless when the policies issued; in fact, he was then a charge to them. At times he was supported to some extent by government relief. Premiums paid by them to procure and keep alive the policies were very high. They evidently endeavored to effect the insurance for the purpose of "speculating on the hazard of a life." This being true, the policies ab initio were void and without legal effect. Washington v. Victory Industrial Life Insurance Company of Louisiana, La.App., 146 So. 766; Robinson v. Washington Fidelity National Life Insurance Company, 16 La.App. 280, 134 So. 115.

In Rombach v. Insurance Company, 35 La.Ann. 233, 48 Am.Rep. 239, the court held that, without a pecuniary interest, a son-in-law has not an insurable interest in the life of his mother-in-law. Inter alia, the court said:

"The insurable interest in the life of another is a pecuniary interest. A policy of insurance, procured by one for his own benefit upon the life of another, the beneficiary being without interest in the continuance of the life insured, is against public policy and therefore void."

In Evans v. Life Insurance Company, La. App., 148 So. 264, 265, Judge Higgins, now a member of the Supreme Court, employed this very definite language in disposing of a controversy very much like the present one: "We find that plaintiff caused the policy to be issued upon the life of the deceased, named himself as beneficiary, and

paid the premiums thereon. Under the law when a policy of life insurance is taken out by a third person, who is not related to the insured within the degree of consanguinity as to create an insurable interest per se, and he has himself named as beneficiary and paid the premiums, the policy is void as being against public policy, the beneficiary not having an insurable interest in the life of the insured." He cited many authorities to sustain what he said.

Plaintiffs cite and rely upon several cases from as many courts of other states of the union. These are persuasive but not controlling here, especially in view of the facts of this case, as we find them to be established, and the expressions of our own courts pertinent to the paramount issue of the case.

The plea of estoppel is alternatively urged upon us. We do not think it well founded. The fact that defendant wrote the insured and the beneficiaries that the policies were canceled for one reason does not bar it from urging this and other reasons in defense of the effort to hold it liable on the contracts. Estoppel of this character is not sustainable unless a party has been induced to rely upon asserted facts or representations and thereby moved or acted to his detriment, or in a manner he would not have done but for his reliance upon such asserted facts or representations. These necessary elements of successful estoppel are wholly lacking here. The policies were ab initio void. They were void because their issuance violated a well-established rule of public policy. Legal vitality could not be breathed into them by the failure of the insurer to assign at once all reasons for their cancellation, even should it be conceded that lack of insurable interest in the beneficiaries was then known to the insurer. The record does not convince us that defendant had such knowledge when the policies were sought to be cancelled.

It is admitted that defendant made legal tender of $135, the amount of premiums paid by plaintiffs on the policies, prior to and since this suit was filed. They are each entitled to judgment for one-half of this amount only.

For the reasons herein assigned, the judgments appealed from are each reduced to $67.50, without interest. Plaintiffs are cast for all costs.