234 So.2d 496 (1970)
ADAM MIGUEZ FUNERAL HOME, INC., d/b/a Miguez Funeral Home, Plaintiff and Appellee,
v.
FIRST NATIONAL LIFE INSURANCE COMPANY, Defendant and Appellant.
No. 3046.
Court of Appeal of Louisiana, Third Circuit.
April 23, 1970.
*497 Normann & Normann, by Michael A. Britt, New Orleans, for defendant-appellant.
Grenese R. Jackson, Jennings, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
This is a suit for benefits under a life insurance policy. From an adverse judgment, the defendant insurer appealed.
The substantial issue is whether the requirement of LSA-R.S. 22:616, that the insured in writing apply or consent to the issuance of the policy, is an expression of public policy. If it is, defendant is not estopped to urge noncompliance with this requirement as a defense.
There is little dispute as to the facts. During the early part of March, 1969, Mr. John N. Trahan, Sr., became concerned as to how he would pay the funeral expense in the event of the death of his son, John N. Trahan, Jr., 22 years of age. On March 10, 1969, the local agent for the defendant, First National Life Insurance Company, called at the home of Mr. Trahan, Sr., to collect the monthly premiums on other policies which he carried. At that time, Mr. Trahan discussed with the agent the possibility of taking a life insurance policy on his son's life for the purpose of paying burial expense. The agent then wrote an application for insurance in the sum of $1,000 on the life of John N. Trahan, Jr., with Mr. Trahan, Sr., as beneficiary. Since John N. Trahan, Jr., was in prison on a narcotics charge and not readily available to sign the application, the agent requested Mr. Trahan, Sr., to sign his son's name, which he did. The agent then falsely signed the application indicating that he had seen the insured sign.
On receipt of the application, together with the initial premium, defendant issued the policy in question on April 1, 1969. The insured, John N. Trahan, Jr., was killed in prison May 10, 1969. The plaintiff, Miguez Funeral Home, handled the funeral arrangements. As beneficiary of the policy, *498 Mr. Trahan, Sr., assigned to the funeral home the benefits of the policy. The funeral home's request to defendant for payment was denied and this suit followed.
The statutes in question read in pertinent part as follows:
LSA-R.S. 22:
"Sec. 616. Application for insurance required
"No life or health and accident insurance contract upon an individual, except a contract of group life insurance or of group or blanket health and accident insurance as defined in this Code, shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, in writing applies therefor or consents thereto, * * *"
"Sec. 617. Alteration of application
"A. Any application for insurance in writing by the applicant shall be altered solely by the applicant or by his written consent, except that insertions may be made by the insurer for administrative purposes only in such manner as to indicate clearly that such insertions are not to be ascribed to the applicant.
"B. Any insurer issuing an insurance contract upon such an application unlawfully altered by its officer, employee, or agent shall not have available in any action arising out of such contract, any defense which is based upon the fact of such alteration, or as to any item in the application which was so altered. Amended and reenacted Acts 1958, No. 125."
"Sec. 618. Application as evidence
"A. No application for the insurance of any insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a correct copy of the application was attached to or otherwise made a part of the policy, or contract, when issued and delivered.
"* * * Amended and reenacted Acts 1958, No. 125; Acts 1958, No. 98, Sec. 1."
As stated above, the insured, John N. Trahan, Jr., did not in writing apply or consent to the issuance of the policy on his life. Hence there was no compliance with LSA-R.S. 22:616. However, the application was filled in by defendant's agent, pursuant to questions asked to the insured's father. Then the agent requested Mr. Trahan to sign his son's name. The agent represented that this procedure was proper and actually signed as a witness, falsely certifying that he had seen the insured sign.
Our jurisprudence is established that the acts of an insurance agent in filling out an application form are the acts of his principal, the insurer, and do not bind the innocent insured or beneficiary, Morein v. American Physicians Insurance Company, 192 So.2d 887 (La.App. 3rd Cir. 1966), writ of certiorari denied, 250 La. 268, 195 So.2d 147. The insurer is estopped to urge a defense based on errors or misstatements in the application made by its agent, Telford v. New York Life Insurance Company, 227 La. 855, 80 So.2d 711 (1955); Miller v. Preferred Life Insurance Company, La.App., 107 So.2d 323. Equitable estoppel may be urged by a party to an insurance contract when he has reasonably relied to his detriment upon an inaccurate or misleading representation of fact made by the other party, Goodwin v. Federal Mutual Insurance Company, La.App., 180 So. 662; Waiver & Estoppel in Louisiana Insurance Law, 22 La.Law Rev. 202.
Under these rules, it is clear that the doctrine of estoppel applies in the present case. The errors and false statements in the application that it had been signed by the insured were made by defendant's agent acting in the course and scope of his employment. There was no fraud on *499 the part of the insured or the beneficiary. Mr. Trahan relied to his detriment on the representation by the agent that the application was being properly drawn. Otherwise, he could have secured the insurance elsewhere.
Defendant contends the doctrine of estoppel cannot be applied because the requirement in LSA-R.S. 22:616, that there be a written application or consent thereto by the insured, is an expression of public policy by our legislature. In support of this proposition defendant cites Rube v. Pacific Insurance Company of N. Y., 131 So.2d 240 (1st Cir. 1961); Succession of Jacobs, 104 La. 447, 29 So. 241 (1901) and Gebelin v. Detroit Fire & Marine Insurance Company, 151 So. 260 (La.App. 1st Cir. 1933). These cases are readily distinguishable from the present matter, because they involved contracts in contravention of the statutory requirement of an insurable interest, LSA-R.S. 22:613 and 614. Our jurisprudence is settled that the public policy purpose of requiring an insurable interest is to prevent wagering contracts on insurance risks. Here the father has an insurable interest in the life of his son under LSA-R.S. 22:613.
There are no cases from our appellate courts on the issue of whether the requirements of LSA-R.S. 22:616 are an expression of public policy. Generally, a public policy statute is one made "for the preservation of public order or good morals." LSA-C.C. Articles 11, 12. Defendant gives no explanation as to how the purpose of LSA-R.S. 22:616 could be to preserve public order or good morals.
A reading of LSA-R.S. 22:616, 617 and 618 together shows that the legislative purpose, in requiring a written application or consent thereto by the insured, is to protect the insured and the beneficiary against any alterations or insertions in the application made without the knowledge or consent of the insured. LSA-R.S. 22:617, subd. B. provides that if the insurer's agents unlawfully alter an application, the insurer shall not be allowed to use any portion of the application in defense of a claim on the policy. LSA-R.S. 22:618 provides further that if a correct copy of the application is not attached to or made a part of the policy when issued, then the application cannot be urged as a defense. It is apparent that the primary purpose of these statutory provisions is to protect the insured and the beneficiary against statements appearing in the application which were not made by the insured. See Manuel v. Peoples Industrial Life Insurance Company, La.App., 189 So. 311 and Sawyer v. Liberty Industrial Life Insurance Company, La.App., 171 So. 415 which involved a previous similar statute, but the rationale is the same.
Since the purpose of the statute is to protect the rights of the insured and the beneficiary and not to preserve public order or good morals, the beneficiary may waive this statutory right established in his favor and urge the doctrine of estoppel. Lowenberg Marks and Company v. H. & C. Newman, 142 La. 959, 77 So. 891 (1918); Borie v. Smither, 8 So.2d 148; Broadwell v. Rodrigues, 18 La.Ann. 68.
The final issue is penalties under LSA-R.S. 22:656. The evidence shows that defendant originally resisted this claim on the grounds that it was not disclosed to their agent at the time of the application that the insured was an inmate of the State Penitentiary. The evidence did not reasonably support such a defense, and it has actually been abandoned on appeal. The only issue raised on appeal by the defendant is the technical defense hereinabove discussed. We agree with the trial judge that the defendant was arbitrary and capricious in failing to pay this claim within the time provided by LSA-R.S. 22.656.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed.